IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

MARCOS REYES GONZALES,

*Defendant*

Case No. 25-cr-171-ABA

**MEMORANDUM AND ORDER**

Defendant Marcos Reyes Gonzales has been charged with a single count of illegal reentry in violation of 18 U.S.C. § 1326(a) and (b)(1). He was originally charged via complaint, and an initial appearance was held on May 29. Mr. Reyes[1] initially consented to detention by the U.S. Marshals Service. ECF No. 8. But he is also subject to an order by U.S. Immigration and Customs Enforcement (ICE) for detention, referred to as a detainer, requiring that if he is released from Marshals custody, the Marshals must turn him over to ICE. The Bail Reform Act governs pretrial detention in federal criminal cases, and in this case poses the following threshold question: if Mr. Reyes is released from Marshals custody, is there a "serious risk that [he] will flee," 18 U.S.C. § 3142(f)(2)(A)?[2] If the answer to that question is "yes," then the main question becomes whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," *id*. §

---

[1] Mr. Reyes has two surnames (Reyes and Gonzales), but goes by the first one, Reyes. *See* ECF No. 20.

[2] That is the threshold question presented in this case because illegal reentry is not an offense enumerated in 18 U.S.C. § 3142(f)(1), and the government does not contend that there is any "risk that [Mr. Reyes] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror," *id*. § 3142(f)(2)(B).

1

3142(g); *see also, e.g., United States v. Hernandez-Cerrato*, No. 23-cr-419-MJM, 2024 WL 1532748, at *3–*4 (D. Md. Apr. 9, 2024) (describing the legal framework).

In part because while in Marshals custody he is unable to seek immigration relief (a proceeding separate from the criminal prosecution pending in this court), Mr. Reyes has requested to be transferred from Marshals custody to ICE custody. He contends that although the government has not shown that there is a serious risk that he will flee if released from immigration detention, the Court need not decide that issue now; after all, it is unclear whether ICE will ever release him (as opposed to transferring him back to Marshals custody, or deporting him), and if it does release him, that would be the more sensible time (and an appropriate time under the Bail Reform Act) to determine whether he poses a risk of flight, and if so, whether there are conditions of release that would reasonably assuage that risk.

The government opposes transfer of Mr. Reyes to ICE custody. The government argues that (1) in deciding whether there is a "serious risk" that Mr. Reyes "will flee," the Court should treat as "irrelevant" that he will be in ICE custody, ECF No. 30 at 9, and (2) upon ignoring the reality that a "release" order by this Court will mean detention by ICE, the Court should find that there is a serious risk that, if actually released, Mr. Reyes "will flee." *Id.* at 11–16.

A detention hearing was held before U.S. Magistrate Judge Douglas R. Miller over the course of June 12 and 16, 2025. That followed the parties' submission of detailed written filings. ECF Nos. 14 & 15. Following the two-part hearing, Judge Miller accepted the government's request to disregard the ICE detainer for Bail Reform Act purposes. But Judge Miller concluded that, regardless, even if Mr. Reyes were not to proceed to ICE custody (or if ICE were to release him), there are conditions of release that would reasonably assure his appearance and community safety. That meant the Bail

Reform Act required entry of an order setting conditions of release. Judge Miller entered such an order, containing a robust set of conditions of release, to become effective if Mr. Reyes is released from immigration custody. ECF No. 22. The government has sought review of that order, and a hearing was held on June 18. A district judge reviews a magistrate judge's detention or release decision *de novo*. *See, e.g.*, *Hernandez-Cerrato*, 2024 WL 1532748 at *3.

The government has not shown that, while Mr. Reyes is in ICE custody, there is a "serious risk that [he] will flee," 18 U.S.C. § 3142(f)(2)(A). As Judge Bredar put it in a recent order, a defendant "cannot flee if he is in jail, and 'ICE Processing Centers' and 'Detention Centers' are most certainly secure facilities." *United States v. Caballero-Jones*, No. 25-cr-0131-JKB, 2025 WL 1622194, at *1 (D. Md. June 6, 2025); *see also United States v. Kilmar Armando Abrego Garcia*, --- F. Supp. 3d ----, No. 3:25-CR-00115-1, 2025 WL 1727738, at *18 (M.D. Tenn. June 22, 2025) ("In this particular case, the Court finds that the undisputed ICE detainer obviates any serious risk of flight because there is no suggestion that, if Abrego is released, the action taken by the government will be anything other than detaining him in ICE custody pending further removal proceedings.").

The government does dispute that "release" from Marshals custody would actually mean transfer to detention by another federal agency, ICE. What the government seeks is for this Court to ignore that fact, and it argues the Court *must* ignore that fact. Some courts have accepted a version of that argument. In particular, in a 2019 decision, the Ninth Circuit held that "the 'individualized evaluation' required by the Bail Reform Act does not include consideration of an immigration detainer or the possibility that the defendant, if released from criminal custody, would be held in immigration custody." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir.

3

2019) (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015)). Some district courts have relied on *Diaz-Hernandez* or similar reasoning to reach similar conclusions. *See* ECF No. 30 at 9 (government brief citing *United States v. Marroquin-Ramirez*, No. 5:25-CR-125 (AJB), 2025 WL 1248652, at *5 (N.D.N.Y. Apr. 17, 2025); *United States v. Perez-Vasquez*, 5:25-CR-0086-GTS-1, 2025 WL 1248651, at *7 (N.D.N.Y. Apr. 22, 2025); *United States v. Hernandez-Us*, No. CR 25-45, 2025 WL 918695, at *7 (W.D. Pa. Mar. 26, 2025); *United States v. Vargas-Ramirez*, No. 20-40003-01-DDC, 2020 WL 1285378, at *2 (D. Kan. Mar. 16, 2020)).[3]

The undersigned has previously rejected that argument. *United States v. Hernandez Cerrato*, No. 23-CR-419-MJM, 2024 WL 1329296, at *1 (D. Md. Mar. 28, 2024), *aff'd as modified,* 2024 WL 1532748 (D. Md. Apr. 9, 2024). Others have as well, including Judge Bredar earlier this month in the *Caballero-Jones* case, 2025 WL 1622194. The Ninth Circuit premised its conclusion to the contrary in *Diaz-Hernandez* on two points. The first was that "immigration status is not an articulated factor in § 3142(g)." 943 F.3d. at 1199. But that is beside the point; the question is whether the existence of an ICE detainer is relevant under § 3142(f)(2).[4] And where, as here,

---

[3] The government includes a Second Circuit case in that string cite, *United States v. Lett*, 944 F.3d 467, 471 (2d Cir. 2019). In *Lett*, the defendant was released from criminal pretrial detention and then held in immigration detention. The district court had held that the government had to chose between prosecuting him or "proceed[ing] with removal proceedings to deport him, one or the other." *Id.* at 470. The Second Circuit reiterated that "[t]he BRA and the INA . . . serve different purposes, govern separate adjudicatory proceedings, and provide independent statutory bases for detention." *Id.* That holding does not support the government's argument here. Mr. Reyes does not dispute that the two statutes provide independent bases for detention.

[4] The Court is also skeptical that the existence of an ICE detainer is "irrelevant" under § 3142(g). That section asks "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and

4

"release" from Marshals custody will mean transfer to ICE custody, the threshold question under the Bail Reform Act is whether the government has shown by a preponderance of the evidence that there is a "serious risk" that a transfer to ICE custody means the defendant "will flee." 18 U.S.C. § 3142(f)(2)(A). In making that determination, it is illogical to ignore the fact that "release" will mean detention by another federal agency—especially because not only does the government have the burden of proving a risk of flight, but also because § 3142(f)(2)(A) requires proof of a "*serious* risk that such person *will* flee" (emphases added), which is a higher standard than § 3142(g), which asks whether there are conditions that will "reasonably assure the appearance of the person as required."

    The other point the Ninth Circuit relied on in *Diaz-Hernandez* was this: "detention of a criminal defendant pending trial pursuant to the Bail Reform Act and detention of a removable alien pursuant to the Immigration and Nationality Act are separate functions that serve separate purposes and are performed by different authorities." 943 F.3d at 1199 (cleaned up, quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019)). Those two statutes are obviously separate statutes, and each independently authorizes detention in certain contexts. But it does not follow that the pendency of an ICE detainer is "irrelevant" to whether the Bail Reform Act authorizes detention. To the contrary, a determination of whether pretrial detention is statutorily authorized—and, by extension, constitutionally permissible, given that the

---

the community." 18 U.S.C. § 3142(g). But in a case, like this one, governed by § 3142(f)(1)—*i.e.*, if the offense is not enumerated in § 3142(f)(1) and there is no serious risk of obstruction of justice or witness intimidation, *id.* § 3142(f)(2)(B)—a court only reaches that question if the government has shown there is "a serious risk that such person will flee." *Id.* § 3142(f)(2)(A).

5

Supreme Court upheld the constitutionality of the Bail Reform Act based in substantial part on the substantive and procedural limitations built into the Act, *see United States v. Salerno*, 481 U.S. 739, 747, 751 (1987)—necessarily requires an assessment of the specific, individualized circumstances presented in a given case. And here, those factual circumstances include the existence of an ICE detainer.

Of course, this is not to say that a person transferred from Marshals custody to ICE custody will indefinitely remain in ICE custody. After all, ICE is constitutionally prohibited from *indefinitely* detaining a person. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). In other words, just as the existence of an ICE detainer is part of the individualized circumstances in this case, so is the fact that ICE detention might end before this criminal case concludes. That raises what is in part a question of timing: not knowing whether, or when, ICE's detention of Mr. Reyes will end, should the Court decide *now* whether, if he were released from ICE detention, there would be a serious risk that he will flee, and whether there are conditions sufficient to reasonably assure appearance and community safety? Or should that determination await release from immigration detention (if that occurs)?

The text of the Bail Reform Act does not expressly answer that question. But its text and structure strongly indicate that courts have flexibility, and are within their discretion in a given case to defer a § 3142(g) determination until such time as ICE no longer seeks continued detention. Questions such as whether there is a serious risk that a defendant will flee, or whether there are conditions that will reasonably assure appearance, are not only fact-intensive, but can be dynamic. Any analysis of whether pretrial detention is justified entails an element of prediction of future events or future behavior. *See, e.g.*, Lauryn P. Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 686 (2018). Just as determinations of how likely it is that a person "will flee" if released, 18

6

U.S.C. § 3142(f)(2)(A), can change over time depending on the circumstances, so too with respect to determinations of "whether there are conditions of release that will reasonably assure the appearance of the person," *id.* § 3142(g), and determinations of "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," *id.* § 3142(g)(4).

In certain circumstances it may make the most sense to conduct a full-blown § 3142(g) analysis at the outset even if a defendant is subject to an ICE detainer, such as if ICE detention is likely to be relatively short, or if it is unlikely that the circumstances presented at the conclusion of ICE detention will be materially different than those presented before transfer to ICE custody, or other circumstances that lead a magistrate judge to conclude that that is advisable timing. But nothing in the Bail Reform Act *requires* that a magistrate judge or district judge conduct a full-blown § 3142(g) analysis as a purely (or largely) hypothetical exercise, particularly where it is unclear whether or when immigration detention will end, or where circumstances are sufficiently dynamic that the purposes of the Bail Reform Act would be more effectively furthered if a § 3142(g) analysis were deferred until after immigration detention ends.[5]

---

[5] One important caveat is the following: where a court concludes that, if a defendant were released from immigration detention without reverting to Marshals detention, the defendant would pose a serious risk of flight under 18 U.S.C. § 3142(f)(2), or that there are no conditions of release that would reasonably assure appearance and community safety under § 3142(g), the Bail Reform Act would authorize an order requiring that, if ICE detention ends, the defendant be taken back into Marshals custody (via an order directing ICE to do so and/or directing Marshals to lodge and effectuate a detainer with ICE). Here, part of the government's argument for reversing Judge Miller's order setting conditions of release is that not only would Mr. Reyes pose a serious risk of flight if he is released from ICE detention, but also that ICE and the Marshals Service could not be trusted to coordinate to bring him back to Marshals custody in that event. Here, Judge Miller concluded that a return to Marshals custody is not necessary, because there are conditions of release that will reasonably assure appearance and community safety. This

The Bail Reform Act authorizes deferral of a full-blown § 3142(g) determination, with detention by ICE in the meantime followed by temporary detention by the Marshals Service pending a further detention hearing, where, as here, "release" from Marshals custody will, at least for a period of time, mean detention by another federal agency.[6] One such provision is § 3142(c), which authorizes courts to impose "conditions" on release in order to "reasonably assure the appearance of the person as required" or to reasonably assure "the safety of any other person or the community." 18 U.S.C. § 3142(c). Another is § 3142(e), which authorizes detention where necessary to "reasonably assure the appearance of the person as required and the safety of any other person and the community." It was based on the combined authority of § 3142(c) and (e) that Judge Bredar issued the order in *Caballero-Jones*, 2025 WL 1622194, at *1 ("Pursuant to 18 U.S.C. § 3142(c)(1)(B) and (e), the Court finds that there is a condition

---

Court agrees. But even if there were a serious risk that Mr. Reyes would "flee" upon release from immigration custody, the Bail Reform Act would not in that circumstance permit an order preventing transfer to ICE custody in the first instance. *See United States v. Mendoza-Belleza*, 420 F. Supp. 3d 716, 716 (E.D. Tenn. 2019) ("As long as Defendant remains in the custody of the executive branch, albeit with ICE instead of the Attorney General, the risk of his flight is . . . nonexistent.") (citing *United States v. Veloz-Alonso*, 910 F.3d 266, 268-69 (6th Cir. 2018)). "Any risk of non-appearance" posed by the possibility that ICE and the Marshals Service would fail to coordinate transfer of such a defendant back from immigration custody to Marshals custody would be "created by the United States and its executive arms, not by the defendant." *United States v. Espinoza-Ochoa*, 371 F. Supp. 3d 1018, 1022 (M.D. Ala. 2019); *see also Santos-Flores*, 794 F.3d at 1091–92 ("If the government, by placing Santos-Flores in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy. . . . The court may not, however, substitute a categorical denial of bail for the individualized evaluation required by the Bail Reform Act.").

[6] This case does not present the question of whether such deferral would be appropriate if the other detaining agency is a state agency, rather than another federal agency. This Court does not decide that question.

8

of release that will reasonably assure the presence of the Defendant for further proceedings in this case, *i.e.,* the Defendant's submission to his detention by ICE pursuant to its authority and stated intention to detain him as an undocumented alien."); *see also id.* ("[I]f ordered released [to ICE custody], the Defendant does not pose a flight risk under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141–50.").

Such an approach is also supported by § 3142(i), which authorizes "temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). It was pursuant to that authority that Judge Maddox entered a similar order in *Hernandez-Cerrato*, 2024 WL 1532748, at *5 ("Mr. Hernandez has satisfied his burden of presenting compelling reasons to justify temporary release to ICE custody.").[7]

Also relevant (although not squarely applicable) is § 3142(d), which authorizes an order for detention, for up to ten days (excluding Saturdays, Sundays, and holidays), to permit "deportation." Although Mr. Reyes is not subject to an order of deportation, at least at present—and the government does not suggest that Marshals detention is necessary to avoid deportation by ICE—the language of § 3142(d) further supports the conclusion that Congress envisioned reasoned coordination of detention pursuant to the Bail Reform Act and the Immigration and Nationality Act.

---

[7] Judge Maddox expressed concern that relying on § 3142(c) as authority for an order providing for release to ICE custody, followed by return to Marshals custody, "would endorse an end run around the statutory requirements for a temporary release order under § 3142(i)." *Id.* at *4 n.7. The upshot of that analysis in *Hernandez-Cerrato* led to a similar result as the one in *Caballero-Jones*. As Judge Madddox put it in *Hernandez-Cerrato*, "[t]he BRA's labyrinthine nature may, in a given case, lay out multiple pathways to the same result." 2024 WL 1532748, at *4.

In this case, the parties and Judge Miller (and court staff, and the probation officer, and court-certified interpreters) have done the hard work, over the course of almost three hours during two hearings, of conducting a full § 3142(g) determination and crafting an order setting conditions of release (ECF No. 22). Judge Miller concluded that, if ICE decides to release Mr. Reyes from immigration detention, he need not return to Marshals custody, because the robust set of conditions set forth in that order are sufficient to reasonably assure his appearance for further proceedings and reasonably assure community safety, and the government has not shown otherwise.

For the reasons discussed above, that was an appropriate approach, but was not required. But also, circumstances can change. And if they do, the government is permitted to seek revocation of the order setting conditions of release. For example, if the federal agency responsible for prosecuting this case (the Department of Justice) learns that the federal agency responsible for immigration enforcement (ICE, which is part of the Department of Homeland Security) is considering releasing Mr. Reyes from immigration custody, DOJ may bring that information to the court's attention (Judge Miller in the first instance), and argue that Mr. Reyes should return to Marshals custody rather than being released on conditions. The government in that circumstance would be free to argue that, in the absence of a transfer back to Marshals custody, there is a serious risk that Mr. Reyes will flee, and no conditions that would reasonably assure appearance and community safety. At present, for the reasons Judge Miller found, the government has not made that showing. But just as it would have been appropriate for Judge Miller to defer a full-blown § 3142(g) determination until after Mr. Reyes were to return from immigration detention to Marshals detention, the government is free to seek further review of Mr. Reyes's pretrial release status if and when immigration detention might end.

For these reasons, the government's Motion to Review Release Order and Motion to Stay Release Order Pending Review, ECF No. 23, is GRANTED IN PART and DENIED IN PART. It is granted insofar as it seeks review of Judge Miller's order setting conditions of release. Otherwise, it is denied. The Order Setting Conditions of Release (ECF No. 22) is AFFIRMED, and the stay presently in effect with respect that order is DISSOLVED. It is further ORDERED that the Government's motion to seal (ECF No. 29) is GRANTED.

Date:  June 24, 2025

                                                /s/
                                         Adam B. Abelson
                                         United States District Judge